# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# STATESBORO DIVISION

| | | |
|---|---|---|
| JACQUN J. WELLS, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | CV623-011 |
| BILL BLACK, *et al.*, | ) ) | |
| Defendants. | ) ) | |

## ORDER AND REPORT AND RECOMMENDATION

*Pro se* plaintiff Jacqun J. Wells has filed this 42 U.S.C. § 1983 case concerning the quality of medical care he received while incarcerated at Bulloch County Jail. *See* doc. 1 at 6-10. The Court granted him leave to pursue his case *in forma pauperis*, doc. 3, and he returned the required forms, docs. 4 & 5. The Court, therefore, proceeds to screen his Complaint pursuant to 28 U.S.C. § 1915A.[1]

---

[1] Because the Court applies Federal Rule of Civil Procedure 12(b)(6) standards in screening a complaint pursuant to § 1915A, *Leal v. Ga. Dep't of Corr.*, 254 F.3d 1276, 1278-79 (11th Cir. 2001), allegations in the Complaint are taken as true and construed in the light most favorable to the plaintiff. *Bumpus v. Watts*, 448 F. App'x 3, 4 n.1 (11th Cir. 2011). Conclusory allegations, however, fail. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (discussing a Rule 12(b)(6) dismissal).

Wells alleges that he arrived at Bulloch County Jail, as a pretrial detainee, in June 2021. Doc. 1 at 6. Several weeks into his incarceration, he "started breaking out in insufferable, painful rashes and blisters, forming on his nose, cheeks, arms, etc." *Id.* at 7. He alleges that he submitted "sick calls," but that there was an unspecified "great delay" in treatment. *Id.* In December 2021, he was taken to an unidentified doctor in Savannah, Georgia. *Id.* The doctor was unable to reach a diagnosis because of a lack of access to Wells' medical records and recommended that he be taken to a hospital. *Id.* Wells alleges that defendant Bill Black, the Bulloch County Sheriff, specifically refused to follow that advise because he "did not have enough staff to watch Plaintiff . . . ." *Id.* Wells was taken back to Bulloch County Jail and placed on antibiotics. *Id.*

Wells' allegations concerning the chronology then become confused. After his return to Bulloch County Jail, he was placed in a "holding cell for 120 days and not allowing [sic] anyone to go near the holding cell." Doc. 1 at 8. Despite that allegation, he states that during that period he was seen by two doctors. *Id.* Also during his detention in the "holding cell," he alleges he was seen by a third doctor. *Id.* That doctor performed

2

a CAT scan, but the results were inconclusive. *Id.* He alleges that during this time, his condition deteriorated. *Id.* at 8-9. At his sentencing in March 2022, a state court judge agreed to transfer Wells "to a facility . . . where Plaintiff could receive the needed medical attention," for his condition. *Id.* at 9. Several days later, he was transferred to "the Georgia Diagnostic Center in Jackson, Georgia" and then to a hospital in Atlanta. *Id.* At the hospital he was finally diagnosed with sarcoidosis. *Id.*

In addition to his allegations concerning his medical treatment, Wells also alleges that he was denied in-person or video visitation with family members. *See* doc. 1 at 8. He also alleges that his late mother was so distressed by observing his condition at the March 2022 sentencing hearing that it "agitated her pre-existing medical condition . . . causing a wrongful death." *Id.* at 9.

The Eleventh Circuit has held, "[a] convicted prisoner has no absolute constitutional right to visitation, such privilege being subject to the discretion of prison authorities, provided the visitation policies of the prison meet legitimate penological objectives." *Evans v. Johnson*, 808 F.2d 1427, 1428 (11th Cir. 1987); *see also Allen v. Warden, Baldwin State Prison*, 717 F. App'x 965, 965-66 (Mem) (11th Cir. 2018). Other courts

have recognized that "[p]retrial detainees must be allowed reasonable visitation privileges and this right may not be arbitrarily restricted." *Jones v. Diamond*, 636 F.2d 1364, 1377 n. 12 (5th Cir. 1981), *overruled on other grounds by Int'l Woodworkers of Am., AFL-CIO and its Local No. 5-376 v. Champion Int'l Corp.*, 790 F.2d 1174 (5th Cir. 1986) (citing *Bell v. Wolfish*, 441 U.S. 520 (1979); *Miller v. Carson*, 563 F.2d 741 (5th Cir. 1977)); *see also, e.g., Tucker v. Powell*, 2009 WL 3416465, at *2 (M.D. Ga. July 8, 2009). Given the uncertain scope of Wells' right to visitation, and the lack of any specific allegations concerning the circumstances of the denial, he fails to state a claim. *See, e.g., Iqbal v. Ashcroft*, 556 U.S. 662, 678 (2009) ("facts that are merely consistent with a defendant's liability , . . . stop[ ] short of the line between possibility and plausibility of entitlement to relief.").

Wells' allegations concerning his mother's death, while sympathetic, are simply too vague and conclusory to assert any viable legal claim. He alleges that her "wrongful death" resulted from her observation of his symptoms, which, in turn, "caused [her] pre-existing medical condition to become fatal." Doc. 1 at 9-10. Those allegations do not implicate any discernable right of either Wells or his mother, under

the Constitution or federal law. They do not, therefore, plausibly implicate any liability under § 1983. *See* 28 U.S.C. § 1983 (creating liability for "deprivation of any rights, privileges, or immunities secured by the Constitution and laws [of the United States]"). Georgia law does recognize an action for "wrongful death," *see* O.C.G.A. § 51-4-2, *et seq.*, but Wells' implicit allegation of a connection between the allegedly inadequate medical care he received, his visible symptoms, his mother's unspecified pre-existing condition, and her death is simply too vague and conclusory to support any claim. *See, e.g., Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level . . . .").

The clear focus of Wells' Complaint is the quality of the medical care he received while incarcerated. To offend the Eighth Amendment,[2] a government official must display "deliberate indifference to the serious medical needs of prisoners . . . ." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). This requires that (1) the prisoner suffered a sufficiently serious

---

[2] As a pretrial detainee, Wells' medical-care claim is technically governed by the Fourteenth Amendment, not the Eighth. *See Goebert v. Lee Cnty.*, 510 F.3d 1312, 1326 (11th Cir. 2007). "However, the standards under the Fourteenth Amendment are identical to those under the Eighth." *Id.* (citation omitted); *see also Thomas v. Bradshaw*, 2022 WL 333244, at *4 (11th Cir. Feb. 4, 2022) (same).

medical need; (2) to which the defendants were deliberately indifferent; (3) resulting in an injury. *Goebert*, 510 F.3d at 1326. Whether a serious medical need existed is an objective standard. *Milton v. Turner*, 445 F. App'x 159, 161-62 (11th Cir. 2011). However, whether defendants were deliberately indifferent is subjective and each defendant is "judged separately and on the basis of what that person knows." *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008). To allege deliberate indifference, a plaintiff must show "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." *Youmans v. Gagnon*, 626 F.3d 557, 564 (11th Cir. 2010) (internal quotations and citation omitted).

Wells' allegation of sarcoidosis, and related symptoms, is sufficient to allege an objectively serious medical need. *See, e.g., Jones v. Tritt*, 2019 WL 719636, at *9 n. 13 (M.D. Pa. Feb. 20, 2019) ("A number of courts have determined sarcoidosis constitutes a serious medical need," and collecting cases). However, there is no allegation sufficient to establish that any defendant was subjectively deliberately indifferent to his condition. As the Eleventh Circuit has recently explained "[t]he Eighth Amendment does not require medical care to be perfect, the best

6

obtainable, or even very good. [Cit.]  Mere negligence or a mistake in judgment does not rise to the level of deliberate indifference. [Cit.] Further, a simple difference in medical opinion between the prisoner's medical staff and the inmate as to the latter's diagnosis or course of treatment does not support a claim of deliberate indifference." *Gomez v. Lister*, 2022 WL 16776248, at *3 (11th Cir. Nov. 8, 2022) (internal quotations, citations, and alterations omitted). Even treatment that amounts to medical malpractice does not violate the Eighth Amendment. *See, e.g., Udell v. Williams*, 2022 WL 4857949, at *5 (S.D. Ga. Oct. 3, 2022) (citing *Campbell v. Sikes*, 169 F.3d 1353, 1363-72 (11th Cir. 1990)) ("[M]ere allegations of negligence or medical malpractice do not amount to deliberate indifference."). Wells' allegations that various doctors failed to diagnosis his condition or prescribed improper treatment alleges, at most, negligence or malpractice. *See* doc. 1 at 7-8.

Wells' allegation that Black refused to permit him to be taken to a hospital, as prescribed by a doctor, due to staffing issues, fares differently. "Even where medical care is ultimately provided, a prison official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs . . . ." *McElligott v. Foley*, 182 F.3d

7

1248, 1255 (11th Cir. 1999). In *Estelle*, the Supreme Court expressly identified "prison guards . . . intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed," as examples of deliberate indifference. 429 U.S. at 104-105. Finally, courts have expressly recognized that "a defendant who delays necessary treatment for non-medical reasons may exhibit deliberate indifference." *Farrow v. West*, 320 F.3d 1235, 1246 (11th Cir. 2003). Wells' allegation that Black interfered with or delayed acting upon the unidentified doctor's determination that Wells should be taken to a hospital "due to lack of staff, the Covid-pandemic [sic][,] and the holidays," is sufficient to allege a deliberate indifference claim against Black.

In summary, Wells' deliberate indifference claim against Black is sufficient for service. The remaining allegations in the Complaint fail to state any claim upon which relief can be granted, and should, therefore, be **DISMISSED**.[3] This Report and Recommendation (R&R) is submitted

---

[3] Though a *pro se* prisoner normally should be given an opportunity to amend his complaint at least once, *see, e.g., Johnson v. Boyd*, 568 F. App'x 719, 724 (11th Cir. 2014), "a district court need not allow amendment if the amended complaint would still be subject to dismissal," *Jenkins v. Walker*, 620 F. App'x 709, 711 (11th Cir. 2015). To the extent that Wells believes that he can address the defects in his claims,

to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

The Court must assess Wells' filing fee. *See* 28 U.S.C. § 1915(b). Plaintiff's prisoner trust fund account statement reflects no average

---

discussed above, the fourteen-day objections period, discussed below, affords him an opportunity to expand or clarify his allegations.

monthly deposits to or balance in his prison trust account. Doc. 5 at 1. Based upon his furnished information, he does not owe an initial partial filing fee. *See* 28 U.S.C. § 1915(b)(1) (requiring an initial fee assessment "when funds exist," under a specific 20 percent formula). His account custodian shall set aside 20 percent of all future deposits to the account, then forward those funds to the Clerk each time the set aside amount reaches $10, until the balance of the Court's $350 filing fee has been paid in full. In the event plaintiff is transferred to another institution, his present custodian shall forward a copy of this Order and all financial information concerning payment of the filing fee and costs in this case to plaintiff's new custodian. The balance due from plaintiff shall be collected by the custodian at his next institution in accordance with the terms of the payment directive portion of this Order.[4]

Since the Court approves for service Wells' deliberate indifference claim against defendant Black, a copy of Plaintiff's Complaint, doc. 1, and

---

[4] The Clerk is **DIRECTED** to send this Order to plaintiff's account custodian immediately, as this payment directive is nondispositive within the meaning of Fed. R. Civ. P. 72(a), so no Rule 72(b) adoption is required. In the event plaintiff is transferred to another institution, his present custodian shall forward a copy of this Order and all financial information concerning payment of the filing fee and costs in this case to plaintiff's new custodian. The balance due from plaintiff shall be collected

a copy of this Order and Report and Recommendation shall be served upon Defendant Black by the United States Marshal without prepayment of cost. The Court **DIRECTS** the Clerk of Court to serve a copy of this Order upon Plaintiff. The Court also provides the following instructions to the parties that will apply to the remainder of this action.

## INSTRUCTIONS TO ALL DEFENDANTS IN THIS ACTION

Because Plaintiff is proceeding *in forma pauperis*, the undersigned directs service be effected by the United States Marshal. Fed. R. Civ. P. 4(c)(3). In most cases, the marshal will first mail a copy of the complaint to a defendant by first-class mail and request the defendant waive formal service of summons. Fed. R. Civ. P. 4(d); Local R. 4.5. A defendant has a duty to avoid unnecessary costs of serving the summons, and any defendant who fails to comply with the request for waiver must bear the costs of personal service unless good cause can be shown for the failure to return the waiver. Fed. R. Civ. P. 4(d). Generally, a defendant who timely returns the waiver is not required to answer the complaint until

---

by the custodian at his next institution in accordance with the terms of the payment directive portion of this Order.

11

60 days after the date the marshal sent the request for waiver. Fed. R. Civ. P. 4(d)(3).

**IT IS FURTHER ORDERED** that any Defendant in this action is granted leave of court to take the deposition of Plaintiff upon oral examination. Fed. R. Civ. P. 30(a)(2). Defendants are further advised the Court's standard 140-day discovery period will commence upon the filing of the last answer. Local R. 26.1. Defendants shall ensure all discovery, including Plaintiff's deposition and any other depositions in the case, is completed <u>within that discovery period</u>.

If a Defendant takes the deposition of any other person, Defendants are ordered to comply with the requirements of Federal Rule of Civil Procedure 30. As Plaintiff will not likely attend such a deposition, the Defendant taking the deposition must notify Plaintiff of the deposition and advise him that he may serve on that Defendant written questions Plaintiff wishes to propound to the witness, if any. Defendants shall present such questions to the witness in order and word-for-word during the deposition. Fed. R. Civ. P. 30(c). Plaintiff must submit the questions in a sealed envelope within 10 days of the notice of deposition.

## INSTRUCTIONS TO PLAINTIFF

Plaintiff is charged with the responsibility of **immediately** informing this Court and defense counsel of any change of address during the pendency of this action. Local R. 11.1. Plaintiff's failure to notify the Court of a change in his address **may result in dismissal of this case**.

**IT IS FURTHER ORDERED** that Plaintiff shall serve a copy of every pleading or other document submitted for consideration by the Court on each Defendant (or, if appearance has been entered by counsel, the Defendant's attorney). Plaintiff shall include with the original paper to be filed with the Clerk of Court a certificate stating the date on which a true and correct copy of any document was mailed to each Defendant or the Defendant's counsel. Fed. R. Civ. P. 5. "Every pleading shall contain a caption setting forth the name of the court, the title of the action, [and] the file number." Fed. R. Civ. P. 10(a).

Plaintiff has the responsibility for pursuing this case. For example, if Plaintiff wishes to obtain facts and information about the case from a Defendant, Plaintiff must initiate discovery. See generally Fed. R. Civ. P. 26 to Fed. R. Civ. P. 37. The discovery period in this case will expire 140 days after the filing of the last answer. Local R. 26.1. Plaintiff does

not need the permission of the Court to begin discovery, and Plaintiff should begin discovery promptly and complete it within this time period. <u>Id.</u>  Discovery materials should **not** be filed routinely with the Clerk of Court; exceptions include: when the Court directs filing; when a party needs such materials in connection with a motion or response, and then only to the extent necessary; and when needed for use at trial.  Local R. 26.4.

Interrogatories are a practical method of discovery for incarcerated persons.  <u>See</u> Fed. R. Civ. P. 33.  Interrogatories may be served only on a **party** to the litigation, and, for the purposes of the instant case, this means that interrogatories should not be directed to persons or organizations who are **not named** as a defendant.  Interrogatories are not to contain more than 25 questions.  Fed. R. Civ. P. 33(a).  If Plaintiff wishes to propound more than 25 interrogatories to a party, Plaintiff must have permission of the Court.  If Plaintiff wishes to file a motion to compel, pursuant to Federal Rule of Civil Procedure 37, he should first contact the attorney for Defendants and try to work out the problem; if Plaintiff proceeds with the motion to compel, he should also file a statement certifying that he has contacted opposing counsel in a good

faith effort to resolve any dispute about discovery. Fed. R. Civ. P. 26(c), 37(a)(2)(A); Local R. 26.5.

Plaintiff has the responsibility for maintaining his own records of the case. If Plaintiff loses papers and needs new copies, he may obtain them from the Clerk of Court at the standard cost of fifty cents ($.50) per page. **If Plaintiff seeks copies, he should request them directly from the Clerk of Court and is advised that the Court will authorize and require the collection of fees from his prison trust fund account to pay the cost of the copies at the aforementioned rate of fifty cents ($.50) per page.**

If Plaintiff does not press his case forward, the court may dismiss it for failure to prosecute. Fed. R. Civ. P. 41; Local R. 41.1.

It is Plaintiff's duty to cooperate in any discovery initiated by a Defendant. Upon no less than five days' notice of the scheduled deposition date, Plaintiff must appear and permit his deposition to be taken and must answer, under oath or solemn affirmation, any question which seeks information relevant to the subject matter of the pending action.

As the case progresses, Plaintiff may receive a notice addressed to "counsel of record" directing the parties to prepare and submit a Joint Status Report and a Proposed Pretrial Order. A plaintiff proceeding without counsel may prepare and file a unilateral Status Report and is <u>required</u> to prepare and file his own version of the Proposed Pretrial Order. A plaintiff who is incarcerated shall not be required or entitled to attend any status or pretrial conference which may be scheduled by the Court.

## **ADDITIONAL INSTRUCTIONS TO PLAINTIFF REGARDING MOTIONS TO DISMISS AND MOTIONS FOR SUMMARY JUDGMENT**

A Defendant may choose to ask the Court to dismiss this action by filing a motion to dismiss, a motion for summary judgment, or both. Under this Court's Local Rules, a party opposing a motion to dismiss shall file and serve his response to the motion within 14 days of its service. Failure to respond shall indicate that there is no opposition to a motion. Local R. 7.5. Therefore, if Plaintiff fails to respond to a motion to dismiss, the Court will assume that he does not oppose the Defendant's motion. Plaintiff's case may be dismissed for lack of prosecution if Plaintiff fails to respond to a motion to dismiss.

Plaintiff's response to a motion for summary judgment must be filed within 21 days after service of the motion. Local R. 7.5, 56.1. The failure to respond to such a motion shall indicate that there is no opposition to the motion. Furthermore, each material fact set forth in a Defendant's statement of material facts will be deemed admitted unless specifically controverted by an opposition statement. If a Defendant files a motion for summary judgment, Plaintiff will have the burden of establishing the existence of a genuine dispute as to any material fact in this case. That burden cannot be met by reliance on the conclusory allegations contained within the complaint. If a Defendant's motion for summary judgment is supported by affidavit, Plaintiff must file counter-affidavits if he wants to contest Defendant's statement of the facts. If Plaintiff fails to file opposing affidavits setting forth specific facts showing that there is a genuine dispute for trial, any factual assertions made in the Defendant's

affidavits will be accepted as true and summary judgment may be entered against Plaintiff pursuant to Federal Rule of Civil Procedure 56.

**SO ORDERED AND REPORTED AND RECOMMENDED,** this <u>13th</u> day of March, 2023.

/s/ Christopher L. Ray
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA